UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SAMUEL J. SMOLEN, JR.,
               Plaintiff,

v.

SGT. ANDREW NEVINS; C.O. VINCENT
TYRE; C.O. JOHN DOE; C.O. JAYSON T.
DUGGINS; MS. HARRISON; CAPT. K.
LAPORTO; MS. QUANDERA QUICK; SUPT.
MICHAEL A. CAPRA; KAREN BELLAMY;
MARK ROYCE; MS. SHERRY IZQUERDO;
and DONALD VENNETTOZZI,
               Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 7494 (VB)

Briccetti, J.:

      Plaintiff Samuel J. Smolen, Jr., proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants Superintendent ("Supt.") Michael Capra, Deputy Superintendent ("Dep. Supt.") Mark Royce, Correction Officer ("C.O.") Jayson T. Duggins, C.O. Vincent Tyre, Sergeant ("Sgt.") Andrew Nevins, Captain ("Capt.") K. LaPorto, Donald Vennettozzi, Sherry Izquerdo, Ms. Harrison, Karen Bellamy, and Quandera Quick violated plaintiff's constitutional rights during his incarceration at Sing Sing Correctional Facility ("Sing Sing").

      Before the Court are defendants' motions to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Docs. ##26, 29). Plaintiff failed to oppose the motions, despite receiving three extensions of time and having more than six months to do so. (Docs. ##32, 36, 39). Therefore, by Order dated December 28, 2018, the Court deemed the motions fully submitted and unopposed. (Doc. #40).

      For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of deciding the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges he filed prison grievances concerning negligence and mismanagement that occurred on Housing Block C in Sing Sing, including the "conditions of the unit and the abuses inflicted upon inmates." (Compl. at 6, 11).[1]

On September 23, 2014, plaintiff alleges he attended a hearing on his placement in Involuntary Protective Custody ("IPC") before Ms. Harrison, an offender rehabilitation coordinator. (Compl. at 10). According to plaintiff, Harrison refused to permit plaintiff to call inmate or staff witnesses at the hearing. Harrison ultimately determined plaintiff should be placed in IPC— a decision, plaintiff alleges, that was "authorized" by Sgt. Nevins and Capt. LaPorto (Id. at 10) in retaliation for plaintiff's grievances concerning Housing Block C (Id. at 6). Plaintiff appealed his IPC placement to Supt. Capra, and Supt. Capra denied plaintiff's appeal.

During plaintiff's move to IPC, he alleges he left a bag containing years of legal research, documents, and correspondence on a lower level of the prison while he transported another bag upstairs. When he returned to retrieve the bag, plaintiff alleges C.O. Tyre, C.O. Duggins, and Sgt. Nevins prevented plaintiff from collecting it, and that C.O. Tyre, Sgt. Nevins, and another unnamed corrections officer later stole the bag and destroyed it. C.O. Duggins allegedly witnessed the incident and did nothing. According to plaintiff, the officers stole and destroyed

---

[1] Citations to the complaint refer to the page numbers assigned by Court's Electronic Case Filing system.

the bag because plaintiff had filed grievances and complaints against Sgt. Nevins and others. Plaintiff further alleges the loss of the bag "delayed and/or denied" his access to the courts. (Compl. at 9).

Plaintiff alleges various officials refused to investigate or respond to his complaints about the mismanagement of Housing Block C and the theft and destruction of his bag. Specifically, Vennettozzi, the director of special housing, and Bellamy, director of the Central Office Review Committee, allegedly did not investigate plaintiff's claims of mismanagement; and Quick, a supervisor for the Inmate Grievance Resolution Committee, allegedly refused to file plaintiff's grievance about the destruction of his bag. Plaintiff also alleges he filed a written complaint about the destruction of the bag with Supt. Capra and Dep. Supt. Royce; however, neither responded or investigated.

Plaintiff also alleges he has been in "continued confinement in IPC for the last three years" (Compl. at 7), and he has not been given a monthly review of his IPC status since his initial placement in September 2014. (Id. at 3). According to plaintiff, Supt. Capra, Dep. Supt. Royce, and Ms. Izquerdo "falsely claim[] to hold monthly meetings" but "no such meetings took place." (Id. at 11).

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679. To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Subject Matter Jurisdiction

As a preliminary matter, defendants move to dismiss plaintiff's claims seeking damages against defendants in their official capacities on the ground that any such claim is barred by the Eleventh Amendment, and thus, the Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1). Although defendants are correct that such claims would fail, see Will v. Michigan

Dept. of State Police, 491 U.S. 58, 70–71 (1989), the Court liberally construes plaintiff's claims to be brought against state employees in their individual capacities; therefore, defendants are not shielded by an immunity defense under the Eleventh Amendment. Thomas v. Calero, 824 F. Supp. 2d 488, 498 (S.D.N.Y. 2011).

III.    Plaintiff's Claims

The Court liberally construes plaintiff's factual allegations to raise (i) procedural due process claims under the Fourteenth Amendment; (ii) retaliation claims under the First Amendment; (iii) a property deprivation claim under the Fourteenth Amendment, (iv) a failure to investigate claim, and (v) a denial of access to the courts claim under the First and Fourteenth Amendments.  Each claim is addressed in turn.

   A.    Due Process

Defendants argue plaintiff's allegations about the IPC hearing fail to suggest insufficient due process.  Defendants do not address plaintiff's allegation of continued confinement in ICP without meaningful review.

The Court finds plaintiff plausibly alleges due process violations as to his hearing and his continued confinement.

      1.    Administrative Hearing

A prisoner is "entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380

5

F.3d 57, 69 (2d Cir. 2004) (citations omitted).[2] "While inmates do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials." Rivera v. Wohlrab, 232 F. Supp. 2d 117, 125 (S.D.N.Y. 2002).

Plaintiff alleges a single defect in his IPC hearing, namely that Harrison refused to call any of the inmate or staff witnesses plaintiff requested, an allegation the Court must accept as true at this stage of the proceedings. Although plaintiff's other allegations indicate he received some due process—he received a hearing before a rehabilitation coordinator at which presented his views, and he later appealed the outcome—neither the record nor the defendants' submissions contain an explanation for Harrison's alleged denial of plaintiff's request to call witnesses. Although there may well be valid reasons a hearing officer might refuse to call a witness on an inmate's behalf, the Court does not know why Harrison did so in this case and cannot presume to know. See Thomas v. Calero, 824 F. Supp. 2d at 502 (denying motion to dismiss absent reason for denial of inmate's request to call witnesses at hearing). Thus, plaintiff has plausibly alleged a due process violation against Harrison in connection with plaintiff's IPC hearing.

       2.       Continued Confinement in IPC

IPC, a form of administrative segregation, removes an inmate from the general population if the inmate poses a threat to the safety and security of himself or others in prison. Such segregation can rise to a procedural due process violation. The Constitution's guarantee of procedural due process affords an inmate a liberty interest in being free from "confinement [that subjects him] to 'atypical and significant hardship . . . in relation to the ordinary incidents of

---

[2] Plaintiff alleges his IPC hearing was punitive, and accepting plaintiff's allegations as true, the Court looks to the process required for disciplinary hearings.

prison life.'" Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Depending on its duration and conditions, administrative segregation can constitute "atypical and significant hardship." See Palmer v. Richards, 364 F.3d 60, 64–66 (2d Cir. 2004). Indeed, one district court concluded a plaintiff alleged a deprivation of a protected liberty interest when she claimed IPC placement for seventy days. See Smart v. Goord, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006). Sufficient due process also requires prison officials to periodically review whether an inmate continues to pose a threat, and thus, whether the inmate's segregation continues to be necessary. Proctor v. LeClaire, 846 F.3d 597, 601 (2d Cir. 2017).

Here, plaintiff alleges he has been confined to IPC for three years (or more than 1,000 days) and that officials have never conducted a periodic review of his confinement. (Compl. at ECF 3, 7). He also claims Supt. Capra, Dep. Supt. Royce, and Ms. Izquerdo have "falsely" claimed to hold reviews of plaintiff's IPC status. (Id. at 11). Thus, plaintiff plausibly alleges a due process claim against these three defendants in connection with his continued confinement in IPC.[3]

Accordingly, plaintiff's due process claims against Ms. Harrison in connection with his IPC hearing, and against Supt. Capra, Dep. Supt. Royce, and Ms. Izquerdo in connection with his continued IPC confinement, may proceed subject to further review on a motion for summary judgment.

---

[3] Defendants argue plaintiff's claims, including his alleged due process violations, are barred under Prison Litigation Reform Act Section 1997e(e), because plaintiff seeks monetary damages for mental and emotional harm. Section 1997e(e), however, does not limit the prisoner's right to request injunctive or declaratory relief. See Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002). The Court liberally reads plaintiff's complaint to request injunctive or declaratory relief in connection with his due process claims.

B.  Retaliation

Defendants argue plaintiff fails to state a First Amendment retaliation claim, because he does not allege a causal connection between his protected activities and defendants' adverse acts.

The Court agrees.

To state a retaliation claim under the First Amendment, "a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation omitted). In view of "the ease with which claims of retaliation may be fabricated," courts "examine prisoners' claims of retaliation with skepticism and particular care." Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order).[4] Thus, "a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." Friedl v. City of New York, 210 F.3d 79, 85–86 (2d Cir. 2000). Even at the motion to dismiss stage, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred." Walker v. Schriro, 2013 WL 1234930, at *8 (S.D.N.Y. Mar. 16, 2013) (internal quotation omitted).

Here, plaintiff's factual allegations fail to suggest any connection between plaintiff's grievances about Housing Block C and the adverse actions he alleges, including the theft and destruction of his bag or his placement in IPC. Plaintiff merely alleges generally that these were "acts of retaliation." (Compl. at 8–9). He provides no facts regarding the underlying grievances

---

[4]  Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

which triggered the officer's alleged retaliatory acts, and he provides no explanation for why Sgt. Nevins, Capt. LaPorto,[5] or any other defendant would retaliate against plaintiff for filing grievances. Plaintiff's retaliation claims are therefore conclusory and do not plausibly give rise to an inference of retaliation.

Accordingly, plaintiff's retaliation claims are dismissed.

C.      Property Deprivation

Defendants argue plaintiff's claim for the alleged theft of his bag fails to state a constitutional violation.

The Court agrees.

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). The only exception to this rule is if the deprivation resulted from "established state procedures." Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)

Plaintiff has not alleged the deprivation of his bag containing legal documents, research, and correspondence was the result of an established state procedure. Rather, plaintiff alleges this was a "random and unauthorized" act. Butler v. Castro, 896 F.2d at 700. Therefore, "because New York provides an adequate post-deprivation remedy in the form of state law causes of

---

[5] Defense counsel does not represent Capt. LaPorto and did not submit the instant motion on his behalf. Defense counsel argues, however, Capt. LaPorto was never served with process, because defense counsel returned the complaint left by the Marshal's Service for Capt. LaPorto, who is no longer an employee of the New York State Department of Corrections and Community Supervision. An unexecuted summons for Capt. LaPorto, however, is not reflected on the docket. Nevertheless, for the reasons stated, plaintiff fails to state a claim against Capt. LaPorto.

action for . . . replevin or conversion," plaintiff's claim for the deprivation of his property is dismissed. Dove v. City of New York, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000).

D. Failure to Investigate

Defendants argue plaintiff's allegations that Supt. Capra, Dep. Supt. Royce, Quick, Vennettozzi, and Bellamy failed to investigate plaintiff's complaints about missing property, grievances, and mismanagement of Housing Block C fail to state a constitutional claim.

The Court agrees.

"It is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983." Wingate v. Horn, 2007 WL 30100, at *6 (S.D.N.Y. Jan. 4, 2007) (collecting cases), aff'd, 2009 WL 320182 (2d Cir. Feb. 10, 2009). Such an allegation only arises to a constitutional violation when the failure to investigate the alleged official misconduct itself results in the alleged constitutional violation. Id.

The failure to investigate plaintiff's allegations in connection with his missing property, grievances, and mismanagement of Housing Block C did not result in plaintiff being deprived of a constitutional right.

Accordingly, plaintiff's claims for failure to investigate are dismissed.

E. Access to the Courts

Plaintiff alleges the destruction of his bag of personal effects impeded his access to the courts in violation of his First and Fourteenth Amendments rights. See Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).

Although defendants do not address this claim, the Court sua sponte dismisses plaintiff's access to the courts claim against C.O. Tyre, C.O. Duggins, and Sgt. Nevins pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

As a preliminary matter, Section 1915(e)(2)(B) mandates that a district court "shall dismiss" a case brought by a plaintiff, proceeding <u>in</u> <u>forma</u> <u>pauperis</u>, "at any time" if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); <u>see also</u> <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (2d Cir. 2007).

To state a denial of access to the courts claim, plaintiff must allege that defendants deliberately or maliciously "took or w[ere] responsible for actions that hindered plaintiff's efforts to pursue a legal claim," and "that the defendant[s'] actions resulted in <u>actual injury</u> to the plaintiff such as the dismissal of an otherwise meritorious legal claim." <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation omitted).

Plaintiff does not allege defendants' alleged theft and destruction of his bag, which contained legal papers, resulted in any consequences, much less "actual injury" to a meritorious legal claim. For example, plaintiff does not allege he was incapable of bringing his legal claims to a court—and in fact, he has filed the instant lawsuit—or that any existing legal claims that would have succeeded were irreparably harmed by the alleged loss of his bag. Accordingly, because plaintiff provides no details whatsoever about how this alleged act hindered a legal claim, the Court <u>sua</u> <u>sponte</u> dismisses this claim.

IV. <u>Qualified Immunity</u>

Finally, defendants argue they are entitled to qualified immunity on all of plaintiff's claims; as relevant here, plaintiff's surviving Fourteenth Amendment procedural due process claims.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "[F]or a right to be clearly established for purposes of a qualified immunity defense, the precise conduct at issue need not previously have been ruled unlawful." Griffin v. Amatucci, 611 F. App'x 732, 734 (2d Cir. 2015) (summary order) (quoting Zahrey v. Coffey, 221 F.3d 342, 357 (2d Cir. 2000) (alterations in original)).

With respect to allegations against Ms. Harrison, it is well-established that prison inmates have a right to a reasonable opportunity to call witnesses and present documentary evidence. See, e.g., Sira v. Morton, 380 F.3d at 69. Likewise, with respect to the allegations against Supt. Capra, Dep. Supt. Royce, and Ms. Izquerdo, the right to periodic review of an inmate's segregation is well-established. See, e.g., Proctor v. LeClaire, 846 F.3d at 601.

Accordingly, the Court finds plaintiff plausibly alleges Supt. Capra, Dep. Supt. Royce, Ms. Izquerdo, and Ms. Harrison violated clearly established constitutional rights of which a reasonable person in their situation would have known. Therefore, dismissing plaintiff's claims against them at this stage of the case on the basis of qualified immunity is inappropriate.

**CONCLUSION**

Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.

Plaintiff's only surviving claims are the procedural due process claims against Supt. Capra, Dep. Supt. Royce, Ms. Izquerdo, and Ms. Harrison. These defendants shall file answers by February 11, 2019.

The Clerk is instructed to terminate the motions (Docs. ##26, 29) and terminate defendants Capt. LaPorto, Vennettozzi, Bellamy, Quick, C.O. Tyre, C.O. Duggins, and Sgt. Nevins.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: January 28, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge